Zintsmaster et al. *v.* Gill, Treasurer, et al.

[No. 22,969. Filed November 28, 1916.]

Railroads.—*Subsidy.*—*Contract.*—*Dependent or Independent Covenants.*—Where, after the voting of a subsidy to a railroad corporation held pursuant to §5464 Burns 1914, §4045 *et seq.* R. S. 1881, as amended Acts 1893 p. 27, Acts 1903 p. 233, concerning public aid to railroads, a written agreement was entered into with such railroad company whereby it agreed, in consideration of such donation to permanently maintain its line to, and its shops and terminals within, a city named, the stipulations to pay the subsidy and to maintain the shops are independent, and not dependent, covenants, and the road, shops and terminals having been constructed and put in operation, the obligation to pay the subsidy is not absolved by the insolvency of the road, but enforcement of the agreement for permanent maintenance of the road, etc., may, upon default, be enforced by a proper action.

From Wabash Circuit Court; *Alfred H. Plummer*, Judge.

Action by Daniel W. Zintsmaster and others against George W. Gill, treasurer, and others. From the judgment rendered, the plaintiffs appeal.

(Transferred from the Appellate Court under §1429 Burns 1914, Acts 1893 p. 29.)   *Affirmed.*

*D. F. Brooks*, for appellants.
*Burdge H. Hurd*, *Fred H. Bowers* and *Milo Feightner*, for appellees.

Lairy, J.—Appellants brought this action as taxpayers of Huntington township, Huntington county, to enjoin George Gill, as treasurer, and Harold Guthrie, as auditor, of Huntington county, from collecting a tax of $132.31 levied against their property. It is shown that a tax was levied against all of the taxable property of that township for the purpose of paying a subsidy voted to the Cincinnati, Bluffton and Chicago Railroad Company, and that the portion assessed against the property of appellants amounted to the sum stated. It appears from the complaint that the railroad company to which the subsidy in question was granted had become insolvent before the complaint in this case was filed and that a receiver had been appointed, who was in charge of its property operating it under the orders of the court for the benefit of its creditors. The receiver was made a party defendant as was also the railroad company. The trial court sustained a demurrer to the complaint addressed thereto by appellees, and, upon appellants' declining to amend, final judgment was entered against them from which this appeal is taken. The only error assigned is based on the ruling of the court in sustaining the demurrer.

The complaint alleges facts showing that such proceedings were had before the board of commissioners of Huntington county as resulted in an election being held on August 19, 1906, in Huntington township, at which a vote was had upon the proposition of donating aid to the construction of

the Cincinnati, Bluffton and Chicago Railroad Company and of authorizing a tax on the property of that township for such purpose. The election resulted in favor of the granting of the subsidy. Other facts are alleged showing that the board of commissioners, in behalf of Huntington township, entered into a written agreement with the railroad company, by the terms of which such company agreed in consideration of such donation to permanently maintain its line of railroad from the city of Portland to the city of Huntington and to permanently maintain within, or adjacent to, the city limits of Huntington its shops and terminals. On behalf of the township, the board of commissioners agreed to collect from the taxpayers of Huntington township a sum of money equal to one per cent. of the value of the taxable property of such township and to levy and collect such an additional tax on such township as would produce a total sum of $98,000, which it agreed to collect and pay to the railroad company between the first day of January and the first day of May, 1918.

Before entering into this contract, the board of commissioners heard evidence, as shown by the complaint, as to the cost of the construction of such terminals and as to the cost of the construction of the railroad within such township and outside of such terminals; and the board determined that the terms of the petition on which the election was held had been complied with and that the requirements of law had been fulfilled.

The complaint does not allege that the railroad company did not construct its line of road from the city of Portland to the city of Huntington or that it did not construct its terminals and shops within or adjacent to the corporation limits of the city of Huntington. It is alleged, however, that the

Cincinnati, Bluffton and Chicago Railroad Company became insolvent and was so adjudged by a court and that a receiver was appointed for said company. The date on which the company was adjudged insolvent and a receiver appointed is not stated in the complaint, which was filed on March 29, 1912, but it is alleged that said railroad company was insolvent at the time the complaint was filed and had been ever since the date of the appointment of the receiver, and that, during such time, it had been operated by a receiver for the benefit of its creditors. By reason of the insolvency of the corporation to which the subsidy was granted, it is alleged that it is not now, and will not be in the future, able to maintain and operate its line of road between Portland and Huntington, and that it will be unable to maintain its shops and terminal in accordance with the stipulations and agreements under which such subsidy was granted.

Appellants' position is that the agreement to pay the subsidy is dependent upon the covenant on the part of the railroad company to maintain its shops and terminals at Huntington and to maintain and operate its line of railroad between Portland and Huntington. If these covenants are dependent or if the agreement on the part of the company to maintain its road shops and terminal was intended as a condition precedent upon which depended the obligation to pay the subsidy, then, a failure from whatever cause to keep and perform such agreement would absolve the other contracting party from all obligations to pay the subsidy. On the other hand, if these covenants were intended to be independent of each other, then the failure to perform by one party would give rise to a cause of action which might be enforced in a proper proceeding, but it would not have the effect of

releasing the other party from the obligation to perform independent covenants entered into and to be performed on his part. The distinction between dependent and independent covenants is well recognized. *Gillum* v. *Dennis* (1853), 4 Ind. 417; 3 Page, Contracts §1471 and cases cited.

In so far as the complaint discloses the facts, the proceedings authorizing the subsidy in question were regular in all respects and were conducted in accordance with the statutes of this State on the subject. §§5464 *et seq.* Burns 1914, §4045 *et seq.* R. S. 1881, as amended, Acts 1893 p. 27, Acts 1903 p. 233.

An examination of these statutes will show that it was the legislative purpose to secure the location and construction of railroads and other structures in connection therewith as required by the petition upon which such donations were to be voted, and, to that end, it was provided that no donation of money voted should be made by the board of commissioners to a railroad company until it was ascertained that the road had been permanently located and work done thereon, and paid for, equal to the donation thus made. §5480 Burns 1914, *supra.* Other sections provide that a failure to construct within a certain time shall operate as a forfeiture of the donation. §§5482, 5484, 5485, 5494 Burns 1914, *supra.* It is very evident from the sections of statutes to which reference has been made that the legislature intended that the location and construction of the road should be a condition precedent to the payment of the donation.

It is provided by §5478 Burns 1914, *supra*, that in taking stock or making donations to railroads the board of commissioners shall make a contract with such railroad company as to freight rates, location of machine shops, depots and such terms as may have

been set forth in the petition upon which such moneys were voted; that such contract shall be spread of record in the auditor's office of the county; and that the township voting the subsidy, its trustee or any resident taxpayer thereof shall have the right to bring suit in any court of competent jurisdiction, in the name of such township, to enforce the terms of such contract.

Some of the things that the board of commissioners have a right to require of the railroad company by the terms of the contract thus provided for are of such a character that they cannot be completely performed prior to, or concurrently with, the payment of the subsidy voted. If freight charges are to be maintained at a certain rate or if machine shops are to be operated at a certain place for an indefinite period of time, it is clear that such provisions could not be completely performed on the part of the company at any time prior to, or concurrently with, the payment of the donation, and, therefore, the statute provides for a suit to enforce such provisions of the contract.

Whether a stipulation in a contract shall be considered as mutual and dependent upon other provisions of a contract depends upon the intention of the parties and is to be determined from a consideration of the entire contract. It is apparent that the agreement on the part of the company to maintain the shops and to continuously operate the road did not constitute the only consideration for which the subsidy was granted. This is one of the considerations by which to determine whether covenants were intended as dependent or independent. In this case the agreements on the part of the railroad which constituted the consideration of the subsidy had been partly performed and the township had received the benefits. The road had

been constructed and operated for a time and the shops and terminals had been located and constructed as provided in the contract and had been maintained for some time, the exact extent of which is not shown by the contract. This is a reason for construing the agreement to maintain the shops and terminals as an independent covenant of the contract rather than one which is dependent. Moreover, it cannot be supposed that it was the intention of the parties to withhold the payment of the subsidy indefinitely for the purpose of determining that the company would permanently operate its road and maintain its shops and terminals at Huntington. It is much more reasonable to infer that it was the intention of the parties to the contract to provide that the donation should be made when road, shops and terminals were located, constructed and put in operation, and that the agreement to maintain them permanently should be treated as an independent agreement to be enforced by proper action.

The court did not err in sustaining the demurrer to the complaint. Judgment affirmed.

Erwin, J., dissents.

Note.—Reported in 114 N. E. 210. See also 33 Cyc 83, 104.